IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


BRIAN KEITH BIGGS,
      Petitioner,

v.                                Case No.:  3:05cv111/RV/EMT

JAMES R. McDONOUGH,[1]
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 9).  Respondent filed an answer and relevant portions of the state court record (Docs. 15, 16).  Petitioner filed a traverse (Doc. 18).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The background and procedural history of this case is undisputed.  On January 23, 2001, following a jury trial, Petitioner was convicted in the Circuit Court in and for Escambia County, Florida, of one count of kidnapping and one count of sexual battery with physical force (Doc. 16, Ex. B at 10, Ex. C).  On February 8, 2001, he was sentenced to life sentences (Doc. 16, Ex. B at 34-

---

[1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

38).  Petitioner appealed his conviction and sentences to the Florida First District Court of Appeal ("First DCA") (Doc. 16, Ex. B at 40, Exs. D, E, F).  On March 8, 2002, the First DCA affirmed the conviction and sentences per curiam without opinion, with the mandate issuing April 3, 2002 (Doc. 16, Exs. E, G).  Biggs v. State, 812 So.2d 404 (Fla. 1st DCA Mar. 8, 2002) (Table).

On August 9, 2002, Petitioner filed a motion for postconviction relief in the trial court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 16, Ex. H at 1-42).  The state court denied the motion on January 16, 2003 (id. at 43-224).  Petitioner appealed the decision to the First DCA (Doc. 16, Ex. I).  The First DCA affirmed the decision per curiam without opinion on April 17, 2003, with the mandate issuing June 23, 2003 (Doc. 16, Exs. J, L).  Biggs v. State, 848 So.2d 308 (Fla. 1st DCA Apr. 17, 2003) (Table).

On April 17, 2003, while the appeal of his first Rule 3.850 motion was pending, Petitioner filed a second Rule 3.850 motion (Doc. 16, Ex. M at 1-42).  The state court dismissed the motion on April 25, 2003, for lack of jurisdiction and on the ground that it was successive (id. at 43-155).  Petitioner appealed the decision to the First DCA (Doc. 16, Exs. N, O).  The First DCA affirmed the decision with a written opinion issued on July 29, 2003, with the mandate issuing August 26, 2003 (Doc. 16, Exs. P, Q).  Biggs v. State, 851 So.2d 802 (Fla. 1st DCA July 29, 2003).

On December 1, 2003, Petitioner filed a petition for writ of habeas corpus with the Florida Supreme Court (Doc. 16, Ex. R).  The state supreme court dismissed the case on August 3, 2004, as not authorized by state law (Doc. 16, Ex. S).  Biggs v. State, 881 So.2d 1110 (Fla. Aug. 3, 2004) (Table).

On February 20, 2004, while the state habeas petition was pending, Petitioner filed a third Rule 3.850 motion with the trial court (Doc. 16, Ex. T at 1-8).  The trial court dismissed the motion as successive on March 31, 2004 (id. at 18-106).  Petitioner appealed the denial to the First DCA (Doc. 16, Ex. U).  The First DCA affirmed the decision per curiam without opinion on October 29,

2004, with the mandate issuing November 23, 2004 (Doc. 16, Exs. W, X).  Biggs v. State, 886 So.2d 228 (Oct. 28, 2004) (Table).

On November 11, 2004, while the appeal of his third Rule 3.850 motion was pending, Petitioner filed a motion to correct illegal sentence with the trial court, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Doc. 16, Ex. Y at 1-27).  The trial court denied the motion on February 2, 2005 (*id*. at 28-29).  Petitioner appealed the decision to the First DCA (Doc. 16, Exs. Z, AA).  The First DCA affirmed the decision per curiam without opinion on May 20, 2005, with the mandate issuing June 15, 2005 (Doc. 16, Exs. AA, BB).  Biggs v. State, 903 So.2d 191 (Fla. 1st DCA May 20, 2005) (Table).

Petitioner initiated the instant section 2254 action on March 25, 2005 (Doc. 1 at 1).  He filed an amended petition on May 6, 2005, in which he presents several grounds of ineffective assistance of trial counsel (Doc. 9 at 4-5).  Respondent concedes that the petition was timely (Doc. 15 at 8).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[2]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and —except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  *Id.* (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by

a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." Section 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." (dictum)); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Picard, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
           (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.*
459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).
The only manner in which the habeas petitioner cited federal authority was by referring to a state
court decision in which "the defendant . . . asserted a broad federal due process right to jury
instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks
omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated
solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim
merely because the defendant in the cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.
Furthermore, the Court clarified that such a citation was obviously insufficient when the record
satisfied the federal habeas court that the federal claim asserted in the cited case was not the same
as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan
v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to
mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's
claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order
to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes
to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed
by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513
U.S. at 365-66.  Recently, the Supreme Court again focused upon the requirement of "fair
presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state
court if that court must read beyond a petition or a brief (or a similar document) that does not alert
it to the presence of a federal claim in order to find material, such as a lower court opinion in the
case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).
The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate
the federal law basis for his claim in a state court petition or brief, for example, by citing in

---

[4]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state
constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in
resolving the appeal.

conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*

Prior to Duncan, the Eleventh Circuit broadly interpreted the "fair presentation" requirement. *See*, *e.g.*, Watson v. Dugger, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court had failed to follow state law which required proof of all elements of the crime, and argued in federal court that this was a due process violation); Mattox v. Dugger, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position).  However, after Duncan, the Eleventh Circuit has taken a more restrictive approach.  For example, in Zeigler v. Crosby, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  O'Sullivan, 526 U.S. at 839-40, 848.  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S.Ct. 2546, 2555 and n.1, 115 L.Ed.2d 640 (1991); Caniff v. Moore, 269 F.3d 1245,

1247 (11ᵗʰ Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11ᵗʰ Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11ᵗʰ Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11ᵗʰ Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11ᵗʰ Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11ᵗʰ Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.     PETITIONER'S CLAIMS

    A.     <u>Ground one:  Ineffective assistance of counsel for failure to investigate the crime scene (cumulative).</u>

Petitioner claims that his trial counsel provided ineffective assistance by failing to investigate the crime scene (Doc. 9 at 4).  He contends that counsel's error prevented her from proving that the State's depiction of the scene was incomplete and inaccurate, and from rebutting the State's claim that the movement of the victim from one area of the apartment to another had any significance independent of the sexual battery (*id*.).  Petitioner states that he raised this claim in two of his Rule 3.850 motions, the first one filed in August of 2002, and the second one filed in April of  2003 (*id*.).

Respondent contends that federal review of this claim is procedurally barred because Petitioner raised it in his second Rule 3.850 motion, and the state court dismissed the claim without substantive review based upon the firmly established and regularly followed state procedural rule that the motion in which the claim was raised was successive (Doc. 15 at 10-11, 17).

In his traverse, Petitioner contends that he raised the claim as part of Ground Two in his first Rule 3.850 motion (Doc. 18 at 1).

The record does not support Petitioner's contention.  Petitioner raised the following claim as Ground Two in his first state post-conviction motion:

> Ground II        Ineffective assistance of counsel -- failure to move for a judgment of acquittal (JOA) on the kidnapping charge after the state rested and the evidence proffered during its case-in-chief failed to support a kidnapping conviction.

(Doc. 16, Ex. H at 8).  In his argument of this claim, Petitioner argued that trial counsel performed deficiently by failing to argue that the evidence adduced from the victim's testimony failed to satisfy the statutory definition of kidnapping, as explained in the jury instructions regarding kidnapping and false imprisonment (*id*. at 8-13).  In describing how the facts did not support the kidnapping charge, specifically, that the risk of detection was not a factor in Petitioner's decision to move the victim from one room to another because the view from the windows was the same from both rooms, Petitioner noted that his counsel either did not discover the facts about the windows or failed to introduce those facts to the jury (*id*. at 12).  Petitioner further argued that he was prejudiced by counsel's error because there was a likelihood that the court would have granted a motion for judgment of acquittal if counsel had made the motion (*id*. at 13).  Petitioner's speculation as to the

reason that counsel failed to argue the facts regarding the view from the windows in a motion for judgment of acquittal, either because counsel was unaware of those facts or because she was aware of them and simply failed to argue them, was not a fair presentation of a claim of ineffective assistance of counsel for failing to investigate the crime scene.  Thus, the undersigned concludes that Petitioner did not fairly present his failure to investigate claim in his first post-conviction motion.

Petitioner did, however, raise the failure to investigate claim in his <u>second</u> Rule 3.850 motion (Doc. 16, Ex. M at 16-19).  In that motion, he presented the claim as follows:

> Ground V        Cumulative ineffective assistance of counsel -- counsel failed to investigate the crime scene diminishing her chances of mounting a defense to defendant's kidnapping charge.

(*id*. at 16).  The state court dismissed the second post-conviction motion on two grounds:  (1) the court lacked jurisdiction to consider the motion, as the direct appeal of Petitioner first post-conviction motion was still pending, and (2) the motion was successive (*id*. at 43-45).

### 1.        Clearly Established Supreme Court Law

As discussed *supra*, this court will consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  <u>Coleman</u>, 501 U.S. at 734-35 and n.1; <u>Caniff</u>, 269 F.3d at 1247.  However, Petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," <u>Judd</u>, 250 F.3d at 1313, or in a manifestly unfair manner.  <u>Ford</u>, 498 U.S. at 424-25; <u>Upshaw</u>, 70 F.3d at 579.

### 2.        Federal Review of State Court Decision

As previously discussed, the state court record confirms the fact that Petitioner raised his claim for the first time in his second post-conviction motion.  One of the grounds on which the trial court based its dismissal of the second Rule 3.850 motion was that Petitioner's appeal of the decision denying his first Rule 3.850 motion was still pending, therefore, the trial court lacked jurisdiction to consider the second motion (Doc. 16, Ex. M at 43-44).  The other ground on which the trial court based its dismissal was that it was a successive motion because Petitioner previously filed a Rule 3.850 motion, and the motion was denied (*id*.).  The trial court attached a copy of Petitioner's first motion, the order denying the motion, and Petitioner's notice of appeal of the order denying the

motion (*id*. at 145).  The First DCA affirmed the decision on the ground that the second Rule 3.850 motion was successive and Petitioner failed to show that the grounds asserted in his second motion were not known and could not have been known to him at the time he filed his first motion (Doc. 16, Ex. P).

> Rule 3.850(f) of the Florida Rules of Criminal Procedure provides, in relevant part:
>
> (f) **Successive Motions**.  A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.

This rule has been consistently interpreted by the Florida courts as requiring a defendant to raise all grounds for post-conviction relief in his first 3.850 motion, unless the new grounds raised in a subsequent motion are fundamentally different in nature.  *Compare* Spaziano v. State, 545 So.2d 843, 844 (Fla. 1989) (second 3.850 motion must be summarily denied where first motion raised claim of ineffective assistance of counsel, second motion sought to raise additional grounds for that ineffectiveness, and second motion did not allege defendant was precluded from asserting the additional grounds in the first motion), *and* Washington v. State, 876 So.2d 1233, 1234 (Fla. 5th DCA 2004) (petition for habeas corpus properly denied as successive 3.850 motion and thus abuse of process where defendant previously filed 3.850 motion asserting several grounds of ineffective assistance of counsel and either re-stated same issues in habeas petition or asserted grounds which could or should have been addressed in previous 3.850 motion), *with* McDowell v. State, 714 So.2d 606, 606-07 (Fla. 4th DCA 1998) (claims raised in second 3.850 motion were sufficiently disparate from prior motion to overcome doctrine of successiveness where first motion challenged existence of a law forbidding possession of cocaine with intent to sell and also challenged whether escape charge had been properly drafted, and second motion sought to withdraw guilty plea on ground that defendant was under influence of psychotropic drugs and also challenged factual basis for plea), *and* Williams v. State, 685 So.2d 1317, 1318 (Fla. 2d DCA 1996) (claims raised in second 3.850 motion were disparate in nature such that they could be heard despite doctrine of successiveness where first motion attacked irregularities at sentencing, and second motion attacked voluntariness of plea).

Florida courts consistently apply the rule that a successive post-conviction motion which asserts different grounds than a defendant's first motion is successive and an abuse of process unless the defendant shows justification for his failure to raise the new ground in his first postconviction motion, or he shows that the ground raised in the second motion is fundamentally disparate in nature from the grounds in the first motion. *See* <u>Washington</u>, 876 So.2d at 1234; <u>Spaziano</u>, 545 So.2d at 844-45. In the instant case, Petitioner has failed to allege cause for his failure to assert the instant claim in his first post-conviction motion. Furthermore, the claim was fundamentally similar in nature to the grounds raised in his first motion, as they were all claims of ineffective assistance of counsel. Therefore, the state court applied the state procedural bar in a consistent and fair manner in dismissing the second Rule 3.850 motion as successive.

    B.    <u>Ground two:  Ineffective assistance of counsel for failure to introduce investigative reports and professionals to support them (cumulative).</u>

Petitioner next claims that his counsel provided ineffective assistance because she failed to introduce police and forensic reports or present testimony from "professionals" to "substantiate" the reports (Doc. 9 at 4). Petitioner states that he raised this claim in his first Rule 3.850 motion filed in August of 2002, and his third Rule 3.850 motion filed in February of 2004 (*id*. at 5).

Respondent argues that this is a two-part claim: (1) counsel's failure to introduce police and forensic reports, and (2) counsel's failure to present expert testimony regarding the content of the reports. Respondent contends that although Petitioner raised the first sub-claim in his first Rule 3.850 motion, he did not raise the second sub-claim until his third post-conviction motion, which the state court dismissed as successive (Doc. 15 at 10-11, 17). Thus, the second claim regarding counsel's failure to call expert witnesses is procedurally barred.

In his traverse, Petitioner argues that he "apprised" the state court of his second claim as part of his argument of the first claim, which he raised as Ground Three in his first Rule 3.850 motion (Doc. 18 at 2).

Upon review of the record, the undersigned concludes that Petitioner did not fairly present his claim of failure to present expert testimony in his first Rule 3.850 motion. Petitioner presented Ground Three as follows:

Ground III     Cumulative ineffective assistance of counsel.   Counsel failed to introduce at trial, a Sheriff's Department Offense Report, Female Sexual Assault Report, and a Serology Report.

(Doc. 16, Ex. H at 14).  The substance of Petitioner's nine-page argument was that counsel should have used the police report to impeach the victim, as the report contained statements from the victim that were contradictory to her trial testimony (*id*. at 14-15, 17-20).  Additionally, Petitioner argued that counsel should have introduced the Female Sexual Assault Report because it showed that the victim did not suffer any injuries as a result of the attack, which contradicted the victim's testimony that she was choked, scratched, and raped, and supported Petitioner's testimony that he did not choke or rape her (*id*. at 15-16).  Petitioner argued that counsel should have introduced the serology report from the Florida Department of Law Enforcement because it showed that none of Petitioner's sperm, semen, pubic hair, or "pubic hair-like material" was found on the victim, which contradicted the victim's testimony that she was raped, and supported Petitioner's testimony that he did not rape her (*id*. at 16-20).  The only mention of expert testimony in the first post-conviction motion appeared as follows:

Kelly Richards [defense counsel] new [sic] about both Kelly Rozier [the nurse who prepared the Female Sexual Assault Report] and the Female Sexual Assault Report by way of an amended discovery that she received on January 11, 2001, Kelly Richards should have called Kelly Rozier as a witness at trial to authenticate her report, so that the Female Sexual Assault Report could have been introduced into evidence at trial.

. . . .

Furthermore, Kelly Richards failed to introduce the F.D.L.E. Seroloy [sic] report completed by Yvette O. McNab. . . .

Once again, counsel had knowledge of both Yvette O. McNab and the Serology Report by way of an amended discovery delivered to counsel on November 2, 2000.  Kelly Richards again did not call Yvette O. McNab at trial to authenticate her report, and subsequently did not introduce the report.

(Doc. 16, Ex. H at 22).

Petitioner's reference to counsel's failure to call the authors of the reports to authenticate the reports is not the same argument he makes in the instant federal petition.  In the instant petition, Petitioner contends:  (1) counsel should have called a medical expert to testify that the transfer of some amount of seminal fluid was highly probable under the circumstances of the attack described

by the victim, and (2) counsel should have called Ms. Rozier to testify why her report did not mention a red mark on the victim's neck that the victim alleged she received during the attack (Doc. 18 at 6-7).  This is the same argument that he made in his third Rule 3.850 motion in support of the following claim:

> Ground III      Ineffective assistance of counsel -- counsel failed to seek medical or medical expert to testify at defendant's trial.

(Doc. 16,  Ex. T at 13-16).  Thus, the undersigned concludes that Petitioner did not fairly present his claim of counsel's failure to present expert testimony in his first Rule 3.850 motion, but he did fairly present it in his third Rule 3.850 motion.  The state court dismissed Petitioner's third post-conviction motion on the ground that it was procedurally barred because it was successive and Petitioner failed to show that the grounds raised in his third motion were not known and could not have been known to him at the time he filed his first motion (Doc. 16, Ex. T at 18-20).

As discussed *supra*, Florida courts consistently apply the rule that a successive postconviction motion which asserts different grounds than a defendant's first motion is successive and an abuse of process unless the defendant shows justification for his failure to raise the new ground in his first postconviction motion, or he shows that the ground raised in the second motion is fundamentally disparate in nature from the grounds in the first motion.  *See* <u>Washington</u>, 876 So.2d at 1234; <u>Spaziano</u>, 545 So.2d at 844-45.  In the instant case, Petitioner has failed to allege cause for his failure to assert the "failure to present expert testimony" claim in his first postconviction motion.  Furthermore, the claim was fundamentally similar in nature to the grounds raised in his first motion, as they were all claims of ineffective assistance of counsel.  Therefore, the state court applied the state procedural bar in a consistent and fair manner in dismissing the third Rule 3.850 motion as successive.

The court will next address Petitioner's non-barred claim that his counsel was ineffective for failing to present the police report and forensic reports as evidence at trial.

       1.      Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable

probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687-88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address one of the prongs if the court determines that the other prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S.Ct. 2104, 158 L.Ed.2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial--for example, what witnesses he presented or did not present--were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314-15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

Moreover, "[c]ounsel will not be deemed unconstitutionally deficient because of tactical decisions." McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir.1984) (citations omitted); Crawford, 311 F.3d at 1312 ("Deliberate choices of trial strategy and tactics are within the province of trial

counsel after consultation with his client. In this regard, this court will not substitute its judgment for that of trial counsel.") (quotation marks, internal alteration, and citation omitted). There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy. Rogers, 13 F.3d at 386; *see also* Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004), *cert. denied*, 474 U.S. 1038-, 125 S.Ct. 1703, 161 L.Ed.2d 531 (2005). "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence -- which is also constitutionally protected -- and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

However, not every strategic decision passes constitutional muster. Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462. In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. Wellington, 314 F.3d at 1260. The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693-94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

> reasonable probability is a probability sufficient to undermine confidence in the
> outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405-406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694-95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider
> the totality of the evidence before the judge or jury.  Some of the factual findings will
> have been unaffected by the errors, and factual findings that were affected will have
> been affected in different ways.  Some errors will have had a pervasive effect on the
> inferences to be drawn from the evidence, altering the entire evidentiary picture, and
> some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only
> weakly supported by the record is more likely to have been affected by errors than
> one with overwhelming record support.  Taking the unaffected findings as a given,
> and taking due account of the effect of the errors on the remaining findings, a court
> making the prejudice inquiry must ask if the defendant has met the burden of
> showing that the decision reached would reasonably likely have been different absent
> the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness
> of the proceeding whose result is being challenged.

*Id.* at 695-96.

### 2.    Federal Review of State Court Decision

As previously discussed, Petitioner raised this claim in his first Rule 3.850 motion (Doc. 16, Ex. H at 14).  In the state court's written decision denying the motion, the court analyzed whether Petitioner satisfied the two-prong Strickland standard (*id*. at 44).  Because the state court explicitly identified and applied the Strickland standard, and the state court did not reach a decision different from the Supreme Court in a case with indistinguishable facts, Petitioner cannot show the state court decision was "contrary to" Strickland.  Therefore, he is entitled to federal habeas relief only if he establishes that the state court's denial of his claim was based upon an unreasonable determination of the facts, or an unreasonable application of Strickland.

The state court decision contained the following factual findings:

First, contrary to the Defendant's assertions, A.M. *did* tell the police that she had been raped in a bedroom.[FN 9] A.M.'s trial testimony was consistent with this statement found in the offense report. Second, A.M.'s trial testimony was *not* inconsistent with the police report relating to whether or not she was on her knees at some point during the attack and whether or not the Defendant stood behind her while the Sexual Battery occurred. The offense reports indicate that A.M. was initially attacked from behind. A.M. stated this at trial. The arrest reports indicate that A.M. was on her knees at some point during her attack; A.M.'s trial testimony is not inconsistent with this. In fact, A.M. testified, similar to her statement in the police report, that she convinced the Defendant to allow her to stand during the sexual assault. Furthermore, the offense report *does not* state that the Defendant stood behind A.M. when he completed the Sexual Battery on her. A.M.'s trial testimony that she was facing the Defendant when he inserted his penis into her vagina was therefore *not* "inconsistent" with the offense report.[FN 10]

The Defendant next alleges that the introduction of the Sexual Assault and Serology reports, prepared by Kelly Rozier (KR) and Yvette McNab (Y.N.), would have discredited A.M., showing that she was not "violently choked, scratched . . . and raped," as she testified to at trial. First, A.M. testified on direct examination that she did not feel the Defendant ejaculate; the penetration/Sexual Battery had been brief. The Sexual Assault and Serology reports showed no semen had been found, which was consistent with A.M.'s description of the brief, yet violent sexual assault.

Second, the injury sustained by A.M. during the assault, a red mark on her neck, was "superficial," *as testified to by A.M.* The photograph introduced by the State at trial showed a "red mark" on A.M.'s neck, consistent with a "superficial" injury.[FN 11] This evidence was not inconsistent with the Sexual Assault report which showed no *visible* injury at the time of the examination. By definition, a superficial injury is non-glaring and potentially not particularly noticeable, especially when considering that the record reflects that the crime occurred at 10:50 a.m., the photographs were taken at 11:10 a.m., and A.M.'s Sexual Assault report was begun at 1:40 p.m. This would have been a sufficient time lapse for a superficial redness to become less or not at all noticeable by K.R.[FN 12] Finally, the Defendant's own trial testimony included statements that he grabbed A.M. by the neck and wrestled her to the ground, either of which could easily have caused the "superficial" red mark testified to by A.M. and evidenced by the photograph.

(*id*. at 46-48).

Applying the <u>Strickland</u> standard to these facts, the state court concluded that the admission of any of the reports would not have aided the defense or changed the outcome of the trial. The

court also concluded that counsel did not perform deficiently by failing to introduce the reports (*id*. at 48).

Petitioner contends he was prejudiced by counsel's failure to introduce the offense report because the report would have impeached the victim's credibility by exposing her prior inconsistent statement regarding whether Petitioner moved her into the bedroom during the attack (Doc. 18 at 3-4).  Petitioner asserts that the victim testified that he moved her into the bedroom during the attack, but the police report did not include the victim's statement of this fact (*id*.).  As Petitioner concedes that the report did not contain an inconsistent statement from the victim regarding whether she was moved during the attack, defense counsel had no basis to use the report to impeach the victim's testimony on this point.

Petitioner also contends that the police report contained the victim's statements regarding her physical position when Petitioner penetrated her that were inconsistent with her trial testimony that she was in a standing position facing Petitioner when he penetrated her (*id*. at 4-5).  As discussed *supra*, the state court found as fact that the victim's trial testimony was not inconsistent with her statements in the police report regarding her physical position during the attack.  Petitioner has failed to rebut this finding with clear and convincing evidence, therefore, this finding is presumed correct.  Based upon the fact that the victim's trial testimony was not inconsistent with her statements in the offense report, Petitioner cannot establish that his counsel performed deficiently by failing to seek admission of the report to impeach the victim.  Furthermore, Petitioner failed to show that the report had evidentiary value beyond impeaching the victim.  Therefore, the state court decision denying Petitioner's claim with regard to counsel's failure to seek admission of the offense report was not contrary to or an unreasonable application of Strickland, nor was it based upon an unreasonable determination of the facts.

Petitioner's claim regarding counsel's failure to seek admission of the Female Sexual Assault Report and the serology report is also without merit.  Petitioner asserts that the serology report would have aided the defense because it exposed the fact that there was no physical evidence that he sexually battered the victim, and it validated his testimony that he did not rape her (Doc. 18 at 5-7).  As previously discussed, the state court found as fact that the sexual assault and serology reports showed no physical evidence that a sexual battery occurred, and this was consistent with the

victim's testimony that she did not feel Petitioner ejaculate and that the penetration/sexual battery had been brief.  Additionally, the court found as fact that the victim's testimony that she suffered a superficial injury to her neck was consistent with the photograph introduced at trial by the State showing a red mark on the victim's neck, and this evidence was not inconsistent with the sexual assault report which showed no visible injury at the time of the examination approximately two and a half hours after the photograph was taken.  Petitioner has failed to rebut these findings with clear and convincing evidence, therefore, the findings are presumed correct.  In light of these findings, Petitioner failed to demonstrate that the reports had any impeachment value.

Furthermore, the sexual assault report showing that there were no bruises, lacerations, scratches or abrasions on the victim had little evidentiary value in light of the photograph depicting a red mark on the victim's neck, the fact that the sexual assault examination began two and a half hours after the photograph was taken, and Petitioner admitted at trial that he came up behind the victim, grabbed her around the neck with his arm, and wrestled her to the floor (*id*. at 155-57).

Moreover, admission of the reports was unnecessary for defense counsel to argue to the jury that the State had no physical evidence that a sexual battery occurred, and that the lack of physical evidence supported Petitioner's version of the incident and not the victim's.  Indeed, the trial transcript shows that Petitioner's counsel argued during closing argument that there was no physical evidence that a sexual battery occurred and that this fact supported Petitioner's version of the incident (*id*. at 190, 192).

As Petitioner failed to show a reasonable probability that admission of the sexual assault and serology reports would have changed the outcome of the trial, he failed to establish that the state court unreasonably applied <u>Strickland</u> in denying his claim.  Therefore, he is not entitled to federal habeas relief on this claim.

      C.     <u>Ground three:  Ineffective assistance of counsel for failure to move for a JOA on both counts one and two (cumulative).</u>

Petitioner claims that his counsel provided ineffective assistance by failing to move for a judgment of acquittal on the kidnapping charge on the ground that the State failed to prove that the movement of the victim had significance independent of the sexual battery (Doc. 9 at 5).  Additionally, Petitioner claims that his counsel failed to move for a judgment of acquittal on the

sexual battery with physical force charge on the ground that the State failed to prove that the sexual act was done without the victim's consent, and that Petitioner used actual physical force likely to cause serious personal injury during the act (*id*.).  Petitioner asserts that he raised this issue in his first Rule 3.850 motion filed in August of 2002, and his second Rule 3.850 motion filed in April of 2003 (*id*.).

Although Respondent states that Petitioner presented this claim in his first post-conviction motion (*see* Doc. 15 at 10, 20), Respondent referred only to Petitioner's claim that counsel failed to move for judgment of acquittal on the kidnapping charge and addressed the merits of only that claim (*id*. at 20-21).  Respondent did not explicitly assert a procedural bar defense to Petitioner's claim that counsel failed to move for a JOA on the sexual battery charge; however, Respondent preserved the procedural defenses of failure to exhaust and procedural bar as to each of Petitioner's claims (*id*. at 10-12).  Thus, this court does not deem Respondent to have waived the exhaustion and procedural bar defenses as to any of Petitioner's claims.  *See* McNair v. Campbell, 416 F.3d 1291, 1304 (11th Cir. 2005), *cert. denied sub nom.* McNair v. Allen, ___ U.S. ___, 126 S.Ct. 1828 (2006) (citing 28 U.S.C. § 2254 (b)(3)).

Upon review of the record, the undersigned concludes that Petitioner presented his claim of failure to move for judgment of acquittal on the sexual battery charge in his second Rule 3.850 motion, not his first post-conviction motion.  In his first Rule 3.850 motion, Petitioner presented the following claim regarding counsel's failure to move for judgment of acquittal:

> Ground II        Ineffective assistance of counsel -- failure to move for a judgement [sic] of acquittal (JOA) on the kidnapping charge after the state rested and the evidence proffered during its case-in-chief failed to support a kidnapping conviction.

(Doc. 16, Ex. H at 8).  The substance of Petitioner's five-page argument was that the evidence introduced by the prosecution did not support a kidnapping conviction because the movement of the victim was slight, inherent in the crime of sexual battery, and was not done to make the sexual battery substantially easier or to escape detection; therefore, counsel should have moved for a judgement of acquittal on that charge (*id*. at 11-13).

In the instant petition, Petitioner claims that counsel provided ineffective assistance by failing to move for judgment of acquittal on the sexual battery charge as well as the kidnapping charge (Doc. 9 at 5).  As to the sexual battery charge, he contends counsel should have moved for

judgment of acquittal on the ground that the State failed to prove lack of consent and the use of physical force (Doc. 9 at 5; Doc. 18 at 10-11).  Petitioner raised this part of his claim, i.e. counsel's failure to move for judgment of acquittal on the sexual battery charge, in his <u>second</u> Rule 3.850 motion as follows:

> Ground VI      Cummulative [sic] ineffective assistance of counsel -- counsel failed to move for a judgment of acquittal (JOA) on the sexual battery charge, at the close of the state's case-in-chief when the state failed to establish the lack of consent (an essential element of sexual battery).

(Doc. 16,  Ex. M at 19-23).  Thus, the undersigned concludes that Petitioner did not fairly present his claim of counsel's failure to move for judgment of acquittal on the sexual battery charge in his first Rule 3.850 motion, but he did fairly present it in his second Rule 3.850 motion.  As previously discussed, the state courts dismissed the second post-conviction on the ground that it was successive (Doc. 16, Ex. M at 43-45, Ex. P).  Also, as discussed *supra*, Florida courts consistently apply the rule that a successive postconviction motion which asserts different grounds than a defendant's first motion is successive and an abuse of process unless the defendant shows justification for his failure to raise the new ground in his first postconviction motion, or he shows that the ground raised in the second motion is fundamentally disparate in nature from the grounds in the first motion.  *See* <u>Washington</u>, 876 So.2d at 1234; <u>Spaziano</u>, 545 So.2d at 844-45.  In the instant case, Petitioner has failed to allege cause for his failure to assert the "failure to move for judgment of acquittal on the sexual battery charge" claim in his first postconviction motion.  Furthermore, the claim was fundamentally similar in nature to the grounds raised in his first motion, as they were all claims of ineffective assistance of counsel.  Therefore, the state courts applied the state procedural bar in a consistent and fair manner in dismissing the second Rule 3.850 motion as successive.  Accordingly, this court is procedurally barred from reviewing the claim of counsel's failure to move for judgment of acquittal on the sexual battery charge.

        The court will next address Petitioner's non-barred claim that his counsel was ineffective for failing to move for judgement of acquittal on the kidnapping charge.

        1.        Clearly Established Supreme Court Law

        The clearly established Supreme Court law applicable to claims of ineffective assistance of counsel is set forth *supra*.

2.      Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 motion (Doc. 16, Ex. H at 8-13).  In the state court's written decision denying the motion, the court analyzed whether Petitioner satisfied the two-prong <u>Strickland</u> standard (*id*. at 44).  Because the state court explicitly identified and applied the <u>Strickland</u> standard, and the state court did not reach a decision different from the Supreme Court in a case with indistinguishable facts, Petitioner cannot show the state court decision was "contrary to" <u>Strickland</u>.  Therefore, he is entitled to federal habeas relief only if he establishes the state court's denial of his claim was based upon an unreasonable determination of the facts, or an unreasonable application of <u>Strickland</u>.

The state court's written decision contained the following analysis:

. . . the record reflects that the Kidnapping charge involved more than an "incidental" move of the Victim, A.M., supporting the Kidnapping charge and conviction.  *See* <u>Gilley v. State</u>, 412 So.2d 68 (Fla. 1st DCA 1982).  There was sufficient and consistent evidence, both in the form of A.M.'s testimony, the offense report, and the State's exhibit #1, showing that the Defendant forcibly took A.M. from a hallway near [a] large picture window (where the Sexual Battery might have more readily have [sic] been discovered by outsiders) and the front "escape" door, into a smaller bedroom where A.M. was forced to undress, a room with fewer windows and a second door as a deterrent to an easy escape, and confined her there to facilitate the rape.[FN 8]  This forcible move was non-incidental, because the Sexual Battery could have easily occurred in the larger room with the accessible escape route and larger windows.

(*id*. at 45-46).

Applying the <u>Strickland</u> standard, the state court concluded that Petitioner failed to establish that he was prejudiced by counsel's failure to move for judgment of acquittal, as the outcome of the trial would not have changed if counsel had made the motion (*id*. at 45-46).

Upon review of the record, this court finds that sufficient competent evidence was presented at trial from which any rational trier of fact could have found the essential elements of kidnapping beyond a reasonable doubt.

Under Florida law in effect in 1998, kidnapping was defined, in relevant part, as follows:

(1)(a)  The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:

. . . .

2.      Commit or facilitate commission of any felony.

Fla. Stat. § 787.01 (1998 Supp.).  Recognizing that a literal construction of the statute could convert

nearly every forcible felony into kidnapping, in Faison v. State, 426 So.2d 963 (Fla. 1983), the

Florida Supreme Court established a three-prong test to determine if the movement or confinement

that allegedly occurred during the commission of the felony justified an additional conviction for

kidnapping.  See Nino v. State, 744 So.2d 528, 530 (Fla. 3d DCA 1999) (citing Faison, 426 So.2d

at 965); Brown v. State, 719 So.2d 955, 956 (Fla. 4th DCA 1998) (citing Faison).  For a kidnapping

conviction to stand,

> [T]he resulting movement or confinement,
> (a)     Must not be slight, inconsequential and merely incidental to the other crime;
> (b)     Must not be of the kind inherent in the nature of the other crime; and
> (c)     Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

Faison, 426 So.2d at 965.

In the instant case, the State presented testimony from the victim, A.M., that on the day of

the attack, she was working as a leasing agent at the Eaton Square apartments (Doc. 16, Ex. C at 91,

94).  She testified that Petitioner came to the leasing office and asked to see an apartment (id. at 94).

After showing Petitioner two apartments, Petitioner asked to see a third unit (id. at 96-99).  They

entered the unit, and A.M. closed the door behind them (id. at 101).  They walked through the

apartment, but Petitioner did not appear interested in it (id.).  A.M. was ready to leave the apartment

and began to walk down the hall from the bedrooms when Petitioner asked her to wait, so she turned

around, answered Petitioner's question about a bathroom, and turned around to leave (id. at 101-03).

A.M. walked to the end of the hallway toward the living area and heard footsteps running behind

her (id. at 103-05).  Before she could turn around, Petitioner had placed his right arm around her

neck and tightened it to the point that she was choking (id. at 105).  Petitioner told her not to scream

or he would kill her (id. at 106).  A.M. testified that she feared he would follow through with his

threat (id.).  Petitioner dragged A.M. back down the hall to the first bedroom with his arm still

around her neck (id.).  A.M. testified that he was cutting off her air and hurting her (id.).  She pulled

on his arm to attempt to loosen his grip, and she could feel his watch digging into her neck (*id*. at 107).  A.M. identified a photograph that showed an injury to her neck (*id*. at 107-08).

A.M. testified that when they got to the bedroom, Petitioner loosened his grip enough that she could breathe (*id*. at 109).  Petitioner repeatedly told her not to scream (*id*.).  He then told her to remove her pants (*id*. at 109-10).  A.M. testified that she hesitated, and Petitioner tightened his arm around her neck and again commanded her to remove her pants (*id*. at 110).  A.M. did not respond, therefore, Petitioner unlatched her belt and told her to finish removing her pants (*id*.).  A.M. complied by removing her shoes and stepping out of her pants (*id*.).  A.M. identified photographs of her pants and shoes where she left them (*id*. at 111).  A.M. testified that Petitioner instructed her to get on her knees (*id*. at 112).  She was frightened because she did not believe she would ever get back up, so she told him she "liked it better" standing up because she thought she may have a better chance of escape (*id*. at 112-13).  Until that point, Petitioner had been behind A.M., but he then moved to face her and grabbed her windpipe with his hand (*id*. at 113).  Petitioner pushed her against the wall and penetrated her vagina with his penis (*id*. at 113, 115).

A.M. testified that there was a window in the bedroom that overlooked a wooded area (*id*. at 117).  In the living area there were large windows (*id*.).

Petitioner testified that A.M. was just outside the doorway of the bedroom when he grabbed her from behind and wrestled her to the floor (*id*. at 155-56).  Petitioner denied that he threatened to kill A.M., but admitted that he told her that if she cooperated with him, he would not hurt her (*id*. at 156-57).  Petitioner admitted that he had his arm around A.M.'s neck, but he denied that he choked her or that he was wearing a watch (*id*. at 157, 165). Petitioner testified that he told A.M. to stand up, and they stood up (*id*. at 157).  He then told her to remove her pants and underwear, and she complied (*id*. at 158).  Petitioner then removed his pants and underwear and told A.M. to penetrate herself with his penis (*id*.).  Petitioner testified that A.M. said she was unable to do that, so Petitioner told her to get back on the floor (*id*.).  A.M. refused to get on the floor and started to attempt to walk away from Petitioner (*id*. at 158-59).  Petitioner testified that he still had his arm around her neck, and they "somehow" ended up deeper into the bedroom (*id*. at 159).  Petitioner denied that he penetrated A.M. (*id*. at 160).

On cross-examination, Petitioner testified as follows regarding how he and A.M. moved from the doorway of the bedroom to further inside the bedroom:

> Q [by the State].  Can you tell us why you took her into this bedroom?
>
> A.      I never took her into that bedroom.
>
> Q.      Nothing happened in this bedroom?
>
> A.      I didn't say nothing happened.  I said I never took her into the bedroom.
>
> Q.      How did she -- did she get into that room?
>
> A.      She walked -- as I explained earlier, once the confrontation started and I had her around the neck and she stood up, she was in the doorway.  As I loosened the grip on her and, you know, as events escalated, she tried to walk away from me and she walked into the room.
>
> Q.      So you didn't direct her into the bedroom?
>
> A.      No, I did not.
>
> Q.      You're saying that was her idea to walk into a closed area with only one door between you and her and getting out?
>
> A.      That's correct.  The whole apartment was close.
>
> Q.      It was her idea, not yours, to go in that bedroom?  You followed her in the bedroom?
>
> A.      I didn't actually -- I won't say I actually followed her into the bedroom because I had my arm around her neck.  I think when she walked into the bedroom it was to get clear -- get me clear of the doorway so she'd have a free path out of the room, because she can't get away from me, is what I'm thinking she walked into the bedroom for.

(*id*. at 168-69).

The evidence, viewed in a light most favorable to the State, is sufficient to permit a rational juror to conclude beyond a reasonable doubt that Petitioner forcibly and by threat moved and confined A.M. against her will with the intent of committing sexual battery.  The injury to the victim's neck, described by the victim and depicted in the photograph, evidences the force used by

Petitioner to overcome the victim's resistance and move her into the bedroom. Furthermore, as the state court noted, moving the victim from a hallway near a large picture window and the front door, into a smaller bedroom where there were fewer windows and a second door, and confining her in the bedroom to facilitate the sexual battery, deterred the victim's escape and made the crime less discoverable by outsiders. A reasonable juror could conclude beyond a reasonable doubt that these actions were not slight, inconsequential, or incidental; that taken as a whole, the movement and confinement were not of the kind inherent in the nature of the underlying sexual battery; and that the movement and confinement made the sexual battery substantially easier to commit and significantly lessened the risk of detection. Because a rational trier of fact could have found guilt beyond a reasonable doubt, the undersigned concludes that Petitioner failed to establish a reasonable probability that a motion for judgment of acquittal on the kidnapping charge would have been granted if counsel had made the motion. The state court decision was not based upon an unreasonable determination of the facts, nor was it an unreasonable application of Strickland; therefore, federal habeas relief should be denied.

Finally, the court notes that Petitioner includes the word "cumulative" in all of his grounds for relief. To the extent Petitioner asserts that the cumulative impact of the errors listed in the previous grounds deprived him of effective assistance of counsel, he is not entitled to relief. As previously discussed, none of the alleged errors of trial counsel that this court substantively reviewed, considered alone, approach the threshold standard of ineffective assistance of counsel. Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel. Furthermore, the remaining claims were procedurally barred. Therefore, Petitioner is not entitled to relief on his claim that the cumulative impact of counsel's alleged errors deprived him of effective assistance of counsel.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James V. Crosby, Jr. as Respondent.

And it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 9) be **DENIED**.

At Pensacola this  24th  day of May 2006.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**